IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIRSTI LOUGHERY, formerly known as KIRSTI )
RAGULA, )
           Plaintiff, )
)
vs )   Civil Action No. 19-383
)   Magistrate Judge Dodge
MID-CENTURY INSURANCE CO., )
           Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Kirsti Loughery brings this action against Defendant Mid-Century Insurance Co. ("Mid-Century"), arising out of Mid-Century's handling of her claim for first party income loss benefits following a motor vehicle accident which occurred on October 24, 2016.

The Complaint, which was originally filed in the Court of Common Pleas of Beaver County and then removed to this Court, alleges four causes of action against Mid-Century. In Count I, Plaintiff alleges that Mid-Century breached the terms of the insurance policy. Count II asserts that Mid-Century breached the duty of good faith and fair dealing and in Count III, Plaintiff claims that Mid-Century engaged in bad faith in violation of 42 Pa.C.S.A § 8371. Finally, Count IV asserts a claim for violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 ("UTPCPL").

On April 19, 2019, Mid-Century filed a partial motion to dismiss (ECF No. 4), in which it contends that Counts II, III and IV of the Complaint should be dismissed. Its motion has been fully briefed and is ripe for adjudication. For the reasons that follow, Mid-Century's motion will be granted with respect to Count IV of the Complaint and denied with respect to Counts II and III.

I. <u>Relevant Factual Background</u>

Plaintiff purchased an automobile policy from Mid-Century[1] which has first-party income loss benefits of $2,500.00 per month and $50,000.00 aggregate. According to Plaintiff, she paid an additional premium for the income loss benefits. (Compl. ¶¶ 5-8.)[2] On October 24, 2016, Plaintiff's vehicle was struck from behind in a violent collision with a third party and she suffered serious and permanent injuries. (Compl. ¶¶ 9, 10.) The third party accepted liability for the accident and paid its policy limits. (Compl. ¶ 11.) At the time of the accident, Plaintiff owned and operated a home cleaning/maid service known as Maid in the USA, which cleaned both residential and commercial properties. She was the sole employee and her duties were very physical, requiring lifting, movements overhead, carrying objects and activities associated with heavy cleaning. (Compl. ¶¶ 9-14.)

Because of the injuries she sustained in the accident, Plaintiff was required to undergo extensive medical treatment, including surgery. As a result, she missed several weeks of work and submitted lost benefit claims which were paid by Mid-Century. (Compl. ¶¶ 15-19.) In addition to medical authorizations, wage loss information, disability slips and other documents, Plaintiff submitted medical narrative reports from Dr. DeChellis and Dr. Myers, who rendered opinions that her continued work at Maid in the USA would aggravate the injuries sustained in the automobile accident. (Compl. ¶¶ 21, 22.) Plaintiff also provided Mid-Century with a disability slip from Dr. DeChellis. (Compl. ¶ 23.)

---

[1] The Complaint filed in state court named Mid-Century and "Farmers Insurance" but the parties have stipulated to discontinue Farmers from the caption of the lawsuit. (ECF No. 5 at 1.)
[2] Petition for Removal (ECF No. 1) Ex. A.

2

According to the Complaint, however, when Plaintiff filed a timely claim with Mid-Century's claim handler, Jeffrey Silfies, for income loss benefits after she closed her business on September 1, 2018, Mid-Century did not pay her claim. Rather, it informed her that it was scheduling a physical examination with Dr. James C. Craig, Jr. and directed her to bring all x-rays, MRIs and medical records and to fill out a medical history and social history questionnaire. (Compl. ¶¶ 20-28 & Exs. 1-3.)

After being asked by Plaintiff's counsel the purpose of the exam, Mr. Silfies responded in a letter dated November 20, 2018 that the purpose was to determine her disability for income loss benefits, stating "The policy states: a person claiming any coverage under this policy must also as required by Pennsylvania law, submit to physical examination at our expense by doctors we select as often as we may reasonably require." (Compl. ¶¶ 29-30 & Exs. 4-5.) Plaintiff's counsel responded by again furnishing the reports of Drs. DeChellis and Myers in support of her inability to return to her previous job with Maid in the USA. In a subsequent letter, counsel explained to Mr. Silfies that, under Pennsylvania law, an insured is only required to submit to a physical examination after "good cause is shown" and because Mid-Century had not provided good cause or obtained a court order, Plaintiff would not be submitting to a physical exam. (Compl. ¶¶ 31-32 & Exs. 6-7.) On November 30, 2018, counsel also sent to Mr. Silfies Plaintiff's tax information for the years 2016 and 2017, information that had previously been requested and sent on several occasions. (Compl. ¶ 33 & Ex. 8.)

On December 5, 2018, Mr. Silfies indicated that he had received counsel's letters but was awaiting some undefined additional information regarding Plaintiff's income loss claim. (Compl. ¶ 34 & Ex. 9.) When subsequently asked what additional information was required, Mr. Silfies replied that Mid-Century was requesting an examination under oath. Plaintiff was again asked to

provide her tax returns as well as a number of other documents, which she did, and the examination under oath eventually took place at the office of Defendant's counsel on February 5, 2019. (Compl. ¶¶ 35-44 & Exs. 10-16.)

Plaintiff alleges that Mid-Century intentionally and without legal justification attempted to schedule a medical examination when it knew or should have known that she was not required to submit to such an examination without a court order based on good cause shown. She also claims that Mid-Century has a well-established business relationship with Dr. Craig and that the sole purpose of scheduling the exam was to "fashion[] a reason to delay or deny Plaintiff's claim for income loss benefits." (Compl. ¶¶ 50-51.)

As of the date of the filing of the Complaint in February of 2019, Mid-Century had not provided Plaintiff with a decision regarding the payment of her income loss benefits. (Compl. ¶ 45.) Plaintiff contends that Mid-Century's failure to provide her with a decision as to her claim for income loss benefits constitutes a bad faith denial of the claim without a reasonable basis. (Compl. ¶¶ 46-49.)

According to the Complaint, Plaintiff has been without income loss benefits since her last day of work on January 1, 2018, has sustained a loss of needed income and has incurred past and ongoing legal costs, fees and expenses associated with the attempt to obtain the benefits. (Compl. ¶¶ 55-57.)

II. Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4

555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Therefore, the Court can consider the Complaint and the exhibits attached thereto, including the insurance policy and the letters between Mid-Century and Plaintiff's counsel.

III. Analysis of Claims Asserted in Complaint

   A. Bad Faith Claims

Both Counts II and III allege that Mid-Century engaged in multiple acts of bad faith. Count II alleges a claim for breach of the duty of good faith and fair dealing, while Count III asserts a bad faith claim pursuant to 42 Pa.C.S.A. § 8371. In Count II, Plaintiff alleges that Mid-Century violated its duty of good faith and fair dealing in a number of ways, including but not limited to by: failing to timely, properly fairly and objectively evaluate her claim for income loss benefits; attempting to schedule a medical examination with without good cause or no legitimate purpose; denying her claim without any reasonable or medical justification; and requiring her to submit the same documents for no legitimate purpose. (Compl. ¶ 68.)

In Count III, the Complaint asserts a claim for statutory bad faith based upon allegations that Mid-Century unreasonably and improperly denied Plaintiff income loss benefits, requiring her to submit to a physical examination without a reasonable basis or good cause and denying her benefits without legitimate reason or explanation.

Both Counts incorporate by reference all of the previous allegations of the Complaint.

Pennsylvania's bad faith statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. A bad faith claim is distinct from the underlying contractual insurance claims from which the dispute arose. *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa.

6

Super. 1997), *appeal denied*, 717 A.2d 1028 (Pa. 1998). "Bad faith is actionable regardless of whether it occurs before, during or after litigation...." *W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 313 (3d Cir. 2003) (citing *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906, 908 (Pa. Super. 1999)).

As Mid-Century notes, in order to prove bad faith, "a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim...Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super.), *appeal denied*, 912 A.2d 838 (Pa. 2006) (citations omitted). However, as the Pennsylvania Supreme Court has held, "proof of an insurer's motive of self-interest or ill-will, while potentially probative of the second prong, is not a mandatory prerequisite to bad faith recovery under Section 8371." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).

In its partial motion to dismiss, Mid-Century argues that both of Plaintiff's bad faith claims are insufficient as a matter of law because other than alleging that Plaintiff was asked to submit to a physical examination, Plaintiff's Complaint contains only boilerplate and conclusory allegations that cannot withstand a motion to dismiss. It cites a case in which the Court of Appeals for the Third Circuit stated that:

> On its face, Smith's complaint (to which was attached copies of the parties' correspondence) fails to allege a legally sufficient cause of action for bad faith under § 8371. The complaint consists of conclusory statements unsupported by facts—State Farm, e.g., "breach[ed] covenants of good faith and fair dealing," (Compl. ¶ 62(r)), and "engag[ed] in unfair settlement negotiations." (Compl. ¶ 62(u)). There are no details describing what was unfair about the negotiations. Similarly, Smith simply asserts that State Farm "intentionally misrepresent[ed] coverage in the policy," (Compl. ¶ 62(d)), and "misrepresent[ed] facts and its evaluation of Plaintiff's claim," (Compl. ¶ 62(k)), without explaining what those misrepresentations may have been.

7

*Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. Nov. 27. 2012). *See also Myers v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3891968 (E.D. Pa. Sept. 6, 2017) (complaint alleging that State Farm "failed to investigate" her claim and "failed to make reasonable offers" was insufficient to state a bad faith claim); *Mondron v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 7384183, at *4 (W.D. Pa. Dec. 21, 2016) (same).

In this case, by contrast, Plaintiff alleges, inter alia, that Mid-Century: forced her to pursue litigation and incur substantial counsel fees and costs; engaged in an adversarial relationship with her and placed her under duress; acted with ill-will and self-motive; failed to properly, timely and objectively investigate and evaluate her claim; engaged in an unreasonable investigative practice; ignored the treatment notes, findings and opinions of her treating physicians and medical providers; unreasonably and unilaterally determined through its own biased agents, servants and employees that she was not entitled to income loss benefits; and failed to provide her with any reasonable explanation for its continued denial in paying her income loss benefits. (Compl. ¶¶ 68, 77.) The Complaint includes allegations that Mid-Century made payment of lost income benefits for a period of time, but once Plaintiff was forced to close her business because she was no longer able to work, Mid-Century required a physical examination despite being provided with reports from two physicians as well as a disability slip. Although she closed her business on September 1, 2018 and made a timely claim for lost income benefits, Mid-Century first required a physical examination and ultimately (but not until December 14, 2018) demanded an examination under oath. Mid-Century also made repeated demands for the same records. Finally, Mid-Century failed to communicate any decision with respect to Plaintiff's lost benefits claim.

These allegations are not mere boilerplate. Rather, they describe specific actions taken

8

by Mid-Century upon which Plaintiff's bad faith claims are based.

Mid-Century also argues that to the extent that the allegations which form the basis for Counts II and III are not mere boilerplate, the only specific allegation made by Plaintiff is that Mid-Century scheduled a physical examination without good cause or an order of court, which, according to Mid-Century, does not constitute bad faith conduct.

Mid-Century's policy specifically provides that a person seeking coverage must "as required by Pennsylvania law, submit to a physical examination at our expense by doctors we select as often as we may reasonably require." (Compl. ¶ 27.) Therefore, Mid-Century argues, since the policy language does not require a court order or a showing of good cause, seeking an independent medical examination cannot constitute bad faith. As it acknowledges, however, whether an auto insurer can require an examination without first petitioning the court, upon a showing of good faith, for an order directing the examination is currently the "subject of debate."

The Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) provides that:

> Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa. C.S. § 1796(a).

In *Sayles v. Allstate Insurance Co.*, 260 F. Supp. 3d 427 (M.D. Pa. 2017), the plaintiff challenged Allstate's policy provision that required an insured to submit to mental and physical examinations by physicians selected by Allstate "when and as often as we may reasonably require" as violating § 1796(a). Allstate moved to dismiss. Although the Pennsylvania Supreme

9

Court had not addressed the issue, the *Sayles* court predicted that the Supreme Court would find Allstate's examination requirement to be in conflict with § 1796(a) and thus unenforceable because the requirement conflicted with the plain language of the statute. The *Sayles* court also noted, among other things, that the Pennsylvania Supreme Court has found other provisions of the MVFRL to prevail over conflicting language in insurance policies.

As Mid-Century notes, in *Scott v. Travelers Commercial Ins. Co.*, 2016 WL 5851960, at *8 (M.D. Pa. Oct. 6, 2016), the Middle District of Pennsylvania certified the case for interlocutory appeal because § 1796 of the MVFRL "involves a controlling question of law as to which there is substantial ground for difference of opinion..." The issue in both *Sayles* and *Scott* was certified by the Third Circuit to the Pennsylvania Supreme Court on October 15, 2018, but the Supreme Court has yet to issue a decision on the question. *Sayles v. Allstate Ins. Co.*, 194 A.3d 1045 (Pa. 2018); *Scott v. Travelers Commercial Ins. Co.*, 194 A.3d 1046 (Pa. 2018). Therefore, Mid-Century contends, the question of whether the examination requirement in its policy conflicts with § 1796(a) and violates public policy is unresolved and therefore, it acted reasonably and in accordance with the terms of its policy in requiring Plaintiff to undergo an examination without seeking leave of a court and establishing good cause.

The Pennsylvania Supreme Court has not yet resolved this question, and therefore, this Court declines to dismiss Plaintiff's statutory bad faith claim at this juncture. The policy language at issue is arguably in conflict with § 1796(a) and may be determined to be void as against public policy. Since at least 2016, various courts interpreting Pennsylvania law have held that insurer examination requirements that conflict with § 1796(a) are void as against public policy. At any rate, as previously discussed, the Complaint sets forth multiple bases which may form the basis for a bad faith claim and Plaintiff's claim is not limited to Mid-Century's demand

10

for a physical examination. Thus, at the pleading stage, this is sufficient.

Therefore, with respect to Counts II and III of the Complaint, Mid-Century's motion to dismiss is denied.

### A. UTPCPL Claim

In Count IV, Plaintiff alleges that Mid-Century's actions violated the UTPCPL. The UTPCPL prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. C.S. § 201-3. This includes certain categories of conduct set forth in § 201-2 as well as "any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 Pa. C.S. § 201-2(4)(xxi).

Mid-Century moves to dismiss this claim on the ground that the refusal to pay a claim or take other action represents nonfeasance, which is not actionable under the statute. Mid-Century contends that the UTPCPL addresses conduct surrounding the sale of an insurance policy, as opposed to conduct arising out of the bad-faith handling of claims, which is covered by § 8371. It further argues that § 8371 was enacted for the purpose of providing an extra-contractual remedy for bad faith claims handling, whereas the UTPCPL (which was already in existence) relates to the insurer's pre-formation conduct.

In response, Plaintiff contends that she has stated a claim under the UTPCPL because she has alleged malfeasance, not nonfeasance.

The Pennsylvania legislature enacted the UTPCPL to protect consumers "from fraud and unfair or deceptive business practices." *Com. ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 923 A.2d 1230, 1236 (Pa. Commw. 2007) (citing *Commonwealth by Creamer v. Monumental Properties, Inc.*, 329 A.2d 812 (Pa. 1974)). A number of Pennsylvania courts have distinguished UTPCPL claims from claims brought under Section 8371: "[t]he insurance bad faith statute

11

applies to post-contract formation conduct. The UTPCPL, on the other hand, applies to conduct surrounding the insurer's pre-formation conduct. The UTPCPL applies to the sale of an insurance policy. It does not apply to the handling of insurance claims. Rather, § 8371 provides the exclusive statutory remedy applicable to claims handling." *Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564-65 (E.D. Pa. 2016) (quoting *Gibson v. Progressive Specialty Ins. Co.*, 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015)). *See also Neustein v. Government Employees Ins. Co.*, 2018 WL 6603640, at *2 (W.D. Pa. Nov. 29, 2018); *Kerr v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 5809989, at *6 (W.D. Pa. Nov. 6, 2018); *Mondron*, 2016 WL 7384183, at *5.

"In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL] and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995) (citing *Gordon v. Pa. Blue Shield*, 548 A.2d 600, 604 (Pa. Super. 1988)).

Plaintiff cites the *Gordon* decision for its description of malfeasance as "an improper performance of the contractual obligation," in contrast to nonfeasance, which is "the mere failure to perform." 548 A.2d at 604. However, the *Gordon* court went on to hold that a refusal to pay benefits is in the nature of nonfeasance, even if the plaintiff asserts that the refusal was unreasonable or that the insurer "misrepresented" that it would pay certain claims by putting provisions in the policy but then denying the claims when they were made. *Id.*

Plaintiff also references cases which distinguish between not conducting an investigation (which is nonfeasance and non-actionable under the UTPCPL) and conducting an improper investigation (which is misfeasance and is actionable under the UTPCPL). *Smith v. Nationwide*

12

*Mut. Fire Ins. Co.*, 935 F. Supp. 616, 621 (W.D. Pa. 1996); *Parasco v. Pacific Indem. Co.*, 870 F. Supp. 644, 648 (E.D. Pa. 1994). Plaintiff contends that she has alleged not that Mid-Century failed to perform an investigation but that it conducted an improper investigation, acted in bad faith and engaged in outrageous and reckless conduct.

However, as Mid-Century notes, Plaintiff did not address more recent case law which concludes that the UTPCPL is limited to claims arising out of the sale of the insurance policy as opposed to those arising out of claims for benefits, for which bad-faith conduct is covered by § 8371. *See, e.g., Neustein v. Gov't Emples. Ins. Co.*, Civil Action No. 18-cv-645, 2018 U.S. Dist. LEXIS 203439, at *4-5 (W.D. Pa. Nov. 29, 2018).

Plaintiff's claims unquestionably relate to the handling of her claim, not the sale of the policy, and thus, are covered by § 8371. Ultimately, Plaintiff's claim is that Mid-Century has not paid loss income benefits that are required under the policy. This is a claim for nonfeasance, not malfeasance. Therefore, with respect to Count IV, Mid-Century's motion to dismiss will be granted.

For these reasons, the Partial Motion to Dismiss filed by Mid-Century (ECF No. 4) will be granted with respect to Count IV of the Complaint and denied with respect to Counts II and III. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIRSTI LOUGHERY, formerly known as KIRSTI RAGULA,<br>        Plaintiff,<br><br>vs<br><br>MID-CENTURY INSURANCE CO.,<br>        Defendant. | Civil Action No. 19-383<br>Magistrate Judge Dodge |

## ORDER

AND NOW, this 2nd day of October, 2019, for the reasons explained above, IT IS HEREBY ORDERED that the Partial Motion to Dismiss filed by Defendant (ECF No. 4) is granted with respect to Count IV of the Complaint and denied with respect to Counts II and III.

IT IS FURTHER ORDERED that Defendant file an answer to the Complaint by October 16, 2019.

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge