IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIRSTI LOUGHERY, *formerly known as* KIRSTI RAGULA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 19-383 ) |
| MID-CENTURY INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Presently before the Court are cross motions for summary judgment filed by Plaintiff Kirsti Loughery, formerly known as Kirsti Ragula (Docket No. 79), and Defendant Mid-Century Insurance Company (Docket No. 74). In addition to the parties' motions and briefs filed in support of and in opposition to such motions (Docket Nos. 75, 80, 83, 87, 89), the Court has considered the parties' concise statements and counter statements of material facts as well as the appendices filed in connection with the parties' briefs (Docket Nos. 76, 77, 78, 81, 82, 84, 85, 86, 88).

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

**I.     Factual Background**[1]

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts relevant to the parties' motions for summary judgment. This case arises out of a dispute over insurance benefits following

---

[1] The relevant facts are derived from the undisputed evidence of record, and the disputed evidence of record is read in the light most favorable to the appropriate non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Plaintiff's involvement in a motor vehicle accident on October 24, 2016 (the "accident"). (Docket No. 76, ¶ 3). Prior to the accident, Defendant had issued an automobile insurance policy (the "Policy") to Plaintiff and Daniel Patricia Loughery, Jr., which was effective October 12, 2016, to April 12, 2017. (*Id.* ¶ 1). The Policy declarations confirm that First Party Benefits included $2,500.00 per month and $50,000.00 aggregate Income Loss Benefits. (*Id.* ¶ 2). According to the Policy, the duties of the insured include the following:

> **Other Duties:**
>
> A person claiming any coverage under this policy must also:
>
> …
>
> 3. As required by Pennsylvania law, submit to physical examinations at our expense by doctors we select as often as we may reasonably require.

(*Id.* ¶ 2 (quoting the Policy, Docket No. 14-1 at 23) (hereinafter, the "independent medical examination clause" or the "IME clause")).

After the accident, Plaintiff filed a claim with Defendant for income loss benefits under the Policy.[2] (Docket No. 76, ¶ 3). Plaintiff complains that Defendant scheduled her for an independent medical examination in accordance with the terms and provisions of the Policy, but Defendant did not have good cause to request an IME and did not obtain a court order for such examination. (*Id.* ¶¶ 4, 5). For some time, Plaintiff did not submit to the requested IME, the parties negotiated back and forth as to issues involving the IME and Plaintiff's medical and tax records, and Defendant paid Plaintiff certain portions of her income loss benefits. (*Id.* ¶¶ 11, 19, 22, 32-65). Plaintiff filed the present lawsuit in state court on February 27, 2019, Defendant's subsequently filed motion to dismiss was denied, and discovery in the case ensued. (*Id.* ¶¶ 56,

---

[2] At the time of the accident, Plaintiff owned and operated, and was the sole employee of, a home cleaning/maid service engaged in both residential and commercial cleaning. (Docket No. 76, ¶ 6).

57). Defendant filed a Motion to Compel IME on November 29, 2019, and by April 6, 2020, an underinsured motorist proceeding had taken place and the IME was no longer relevant as Defendant paid Plaintiff's remaining income loss policy limit pursuant to an underinsured motorist award and a separate agreement. (*Id.* ¶¶ 57, 65).

Plaintiff commenced this case by filing a Complaint in the Court of Common Pleas of Beaver County, Pennsylvania on February 27, 2019. (Docket No. 1-2; Docket No. 76, ¶ 56). On April 4, 2019, Defendant filed a Petition for Removal of Civil Action based on this Court's diversity jurisdiction. (Docket No. 1). The case was reassigned to this judicial officer on September 23, 2020. Although Plaintiff's Complaint originally included a number of counts, the only count presently remaining for the Court's consideration is Count III, which asserts a claim of statutory bad faith in violation of 42 Pa. Cons. Stat. Ann. § 8371 *et seq.*, alleging that Defendant requested an IME without obtaining a court order and without good cause and thus failed to pay Plaintiff her income loss benefits without good cause. (Docket No. 1-2 at 15-17). Plaintiff and Defendant have filed cross motions for summary judgment. The motions have been fully briefed by the parties and are now ripe for decision.

## II.   Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[T]he mere existence of *some* alleged factual dispute

3

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law. *See Boyle v. Cnty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. *See Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *See Boyle*, 139 F.3d at 393. The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position. *See Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991). Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. at 324.

### III.  Discussion

In Count III of her Complaint, Plaintiff alleges that Defendant acted unreasonably and in bad faith by attempting to have Plaintiff submit to a physical examination without any reasonable basis or good cause shown, and unreasonably and in bad faith denied Plaintiff the payment of

income loss benefits as a result of her accident for no legitimate reason or explanation. (Docket No. 1-2, ¶¶ 71-73). Plaintiff contends that such actions violate the mandates of 42 Pa. Cons. Stat. Ann. § 8371 *et seq.*, which entitles her to a recovery of interest on the amount of the claim from the date of the claim, punitive damages, and court costs and attorney fees. (*Id.* ¶ 74).

Defendant moves for summary judgment, asserting that the undisputed material facts establish that Plaintiff is unable to meet her burden of proving bad faith, by clear and convincing evidence, as a matter of law. Among Defendant's arguments is that it had a reasonable basis for requesting an IME and not accepting Plaintiff's claim for additional income loss benefits. Specifically, Defendant argues that the type of IME clause in the Policy – which required Plaintiff to submit to an IME without any need for a court order – was the subject of debate in the courts as Pennsylvania law on the validity of such clauses was unsettled at the time. Plaintiff also moves for summary judgment, arguing that the language of the Policy's IME clause specifically mentioned Pennsylvania law, and that the Pennsylvania statute invoked by such language was clear. Plaintiff concludes that the relevant Pennsylvania law was not unsettled at the time, which represents clear and convincing evidence that Defendant lacked any reasonable basis for requesting an IME and denying Plaintiff's benefits, and therefore that Defendant acted in bad faith.

A. **Statutory Bad Faith**

In order to succeed on a statutory bad faith claim, an insured must prove: "'(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *American Nat'l Prop. & Cas. Co. v. Felix*, No. 3:16-cv-147, 2018 WL 1747697, at *5 (W.D. Pa. Apr. 11, 2018) (quoting *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)).

"The first prong of the *Babayan* test is objective, so if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot as a matter of law be bad faith."  *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (internal quotation marks and citation omitted).  The second prong requires a demonstration "that the 'insurer knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim.'"  *Felix*, 2018 WL 1747697, at *6 (quoting *Rancosky v. Washington Nat'l Ins. Co.*, 130 A.3d 79, 93 (Pa. Super. Ct. 2015)).

Additionally, an insured must establish its insurer's bad faith through clear and convincing evidence.  *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750-52 (3d Cir. 1994).  The "insured's burden in opposing a summary judgment motion is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'"  *Totty v. Chubb Corp.*, 455 F. Supp. 2d 376, 389 (W.D. Pa. 2006) (quoting *Babayon*, 430 F.3d at 137 (internal citation and quotation marks omitted)).  Since the insured's "burden is to show a lack of reasonable basis for defendant's handling of the claim, defendant may also prevail at summary judgment by affirmatively demonstrating a reasonable basis for its actions." *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 n.3 (E.D. Pa. 1998), *aff'd without opinion*, 172 F.3d 860 (3d Cir. 1998).

Thus, an insurer's interpretation of a policy does not demonstrate bad faith if that interpretation was not unreasonable and if the insurer did not know of or recklessly disregard its lack of a reasonable basis in denying a claim.  *See, e.g., Atlantic Cas. Ins. Co. v. Epstein*, No. Civ.A.03-6506, 2004 WL 2075038, at *6 (E.D. Pa. Sept. 15, 2004).  "Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law."  *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587

(E.D. Pa. 1999); *see also Gray v. Allstate Indem. Co.*, Civ. Action No. 3:13-CV-1232, 2015 WL 758292, at *11 (M.D. Pa. Feb. 23, 2015) (granting summary judgment in favor of the insurer on the plaintiff's bad faith claim where the court found that the insurer's interpretation of certain terms was reasonable because those terms were ambiguous and relevant Pennsylvania law on the matter was unsettled); *Emps. Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 494 (W.D. Pa. 2007) ("Under Pennsylvania law, an insurance company's construction of an insurance policy that turns out to be erroneous does not automatically correlate to bad faith conduct."). Thus, an insurer is not required to demonstrate that its investigation yielded the correct conclusion, as "[u]nder Pennsylvania law, the presence or absence of bad faith does not turn on whether the insurer was legally correct in denying an insured's claim," and "[i]f it did, the need for an independent analysis of an insured's bad faith claim would disappear, as the applicable Section 8371 claim would turn specifically on the underlying coverage determination." *Estate of Sippey v. Metro. Grp. Prop. & Cas. Ins. Co.*, Civ. Action No. 17-227, 2017 WL 5971126, at *3 (W.D. Pa. Dec. 1, 2017) (internal quotation marks and citations omitted).

      **B.**      **The Parties' Arguments**

Here, the question before the Court is whether the undisputed material facts show that Defendant had a reasonable basis for requesting that Plaintiff submit to an IME, and whether Defendant had a reasonable basis for interpreting its Policy's IME clause in conjunction with Pennsylvania law as permitting it to request an IME without obtaining a court order. Given the nature of the inquiry here and the evidence of record, the Court finds that no reasonable trier of fact could find in Plaintiff's favor under the clear and convincing standard of proof of her bad faith claim.

First, Plaintiff's argument that Defendant had no reasonable basis for seeking an IME in the first place – and that Defendant unreasonably ignored the overwhelming evidence that Plaintiff was disabled and instead in bad faith sought to have her submit to an IME simply because Defendant believed it was entitled to do so under the Policy – is not supported by the exhibits that she cites in support. (Docket No. 83 at 7). The exhibits that Plaintiff cites to support such argument include a letter from Plaintiff's attorney and excerpts from deposition testimony of two of Defendant's employees (claims handler Jeffrey Silfies and supervisor Holly Alvarez), all of which serve simply to demonstrate the parties' differing views as to whether, under the terms of the Policy and Pennsylvania law, Defendant had to obtain a court order to require Plaintiff to attend an IME. (Docket Nos. 82-30, 82-31, 82-32, 82-33, 82-34).[3] In contrast, Defendant responds to Plaintiff's initial argument – that the medical evidence of Plaintiff's disability was so overwhelming that no good cause for requesting an IME could have existed – by pointing to Ms. Alvarez's testimony indicating that she believed Defendant did have good cause to request an IME. (Docket No. 88-1). Further, in her testimony Ms. Alvarez explained the basis for such conclusion by discussing a number of factors, including gaps in Plaintiff's wage loss claim when Plaintiff was continuing to work after her accident, the need for an independent opinion on the assertion of Plaintiff's permanent disability, questions that had arisen about Plaintiff's right trapezius overuse injury, as well as the fact that one of Plaintiff's doctors had opined that Plaintiff's prognosis was good and acupuncture was helping but Defendant had not received any acupuncture records. (*Id.*). Therefore, in light of the evidence cited by both parties, the Court finds that Plaintiff has not shown by clear and convincing

---

[3] Although Plaintiff cites to "ECF No. 77, Ex. 30, 31, 32, 33 and 34" (Docket No. 83 at 7) to substantiate her statement, no such numbered exhibits appear in the Appendix to Defendant's Concise Statement of Material Facts, which is filed at that Docket Number. Because exhibits that are numbered thusly do appear in the Appendix to Plaintiff's Motion for Summary Judgment (Docket No. 82, Exhibits 30-34), the Court presumes that those exhibits are the materials to which Plaintiff intends to cite in her brief.

evidence that, because of the overwhelming evidence demonstrating that Plaintiff was disabled, Defendant had no reasonable basis for requesting an IME.

Plaintiff's second argument, that Defendant had no reasonable basis for requesting an IME based on the Policy language in conjunction with Pennsylvania law, is not supported by the state of the relevant Pennsylvania law at the time. As noted, *supra*, the Policy's IME clause provided that, among the duties of a "person claiming any coverage under this policy," such person must, "[a]s required by Pennsylvania law, submit to physical examinations at our expense by doctors we select as often as we may reasonably require." (Docket No. 14-1 at 23; Docket No. 76, ¶ 2). Meanwhile, Section 1796 of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") provides as follows:

> Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa. Cons. Stat. Ann. § 1796(a).

Plaintiff argues that by including the phrase "As required by Pennsylvania law" in the IME clause, the parties were obviously bound by Section 1796, which clearly indicated that Defendant had to obtain a court order to require Plaintiff to submit to an IME. Defendant argues, in contrast, that the IME clause did not state "As required by Section 1796" as Plaintiff seems to imply but rather referred to "Pennsylvania law" generally, that the Policy explicitly provided that an IME could be requested upon good cause without a court order, and that Pennsylvania law

9

was unsettled at the time as to whether – if a particular policy provided otherwise – an insurer had to obtain a court order in accordance with Section 1796 to require a claimant to submit to an IME. Defendant further asserts that, at the time it requested an IME, there was a split in decisions by courts that had considered this issue, and that it was relying on an interpretation of the law that was reasonable at the time, but that since the law was then unclear, its reliance on that interpretation (even if it later proved to be incorrect) does not constitute statutory bad faith.

The Court agrees that, prior to the Pennsylvania Supreme Court's decision in *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110 (Pa. 2019), there was notable confusion as to whether insurers must obtain an order, upon a showing of good cause, to require a claimant seeking first party wage loss under Pennsylvania's motor vehicle code to submit to an IME if their policies contained an IME clause providing otherwise. In fact, although the United States District Court for the Middle District of Pennsylvania predicted that the Pennsylvania Supreme Court would not enforce IME clauses because they are contrary to Section 1796(a), the United States Court of Appeals for the Third Circuit concluded on appeal that there was substantial ground for difference of opinion that warranted certification for immediate interlocutory appeal. *See* Docket No. 85-12 (Exhibit AC, Petition for Certification of Question of State Law); *Sayles v. Allstate Ins. Co.*, Nos. 17-3463 & 17-3769, 2019 WL 11317938 (3d Cir. Dec. 27, 2019); *Sayles v. Allstate Ins. Co.*, 260 F. Supp. 3d 427 (M.D. Pa. 2017); *Scott v. Travelers Commercial Ins. Co.*, Civ. No. 1:14-CV-00535, 2016 WL 5851960 (M.D. Pa. Oct. 6, 2016). A similar conclusion was reached in cases from the Allegheny County Court of Common Pleas, which decided that such IME clauses conflict with Section 1796(a) and declined to enforce them, but the Pennsylvania Superior Court and the United States District Court for the Eastern District of Pennsylvania upheld IME clauses. *See Williams v. Allstate Ins. Co.*, 595 F. Supp. 2d 532 (E.D. Pa. 2009);

*Fleming v. CNA Ins. Cos.*, 597 A.2d 1206 (Pa. Super. Ct. 1991); *Nationwide Ins. Co. v. Hoch*, 36 Pa. D. & C.4th 256 (Allegheny Cnty. Common Pleas Ct. 1997); *Erie Ins. Exch. v. Dzadony*, 39 Pa. D. & C.3d 33 (Allegheny Cnty. Common Pleas Ct. 1986); *see also Levine v. Travelers Prop. Cas. Ins. Co.*, 69 A.3d 671, 678 (Pa. Super. Ct. 2013) (explaining that an IME "may be performed where the subject voluntarily submits, where an insurance policy so provides, or pursuant to a court order").

Then, in *Sayles*, the Pennsylvania Supreme Court answered the following certified question from the United States Court of Appeals for the Third Circuit:

> Does an automobile insurance policy provision, which requires an insured seeking first-party medical benefits under the policy to submit to an [IME] whenever the insurer requires and with a doctor selected by the insurer, conflict with 75 Pa.C.S. § 1796(a) of the [MVFRL], such that the requirement is void as against public policy?

219 A.3d at 1112. After reviewing the split in the courts that had addressed the issue, and following extensive discussion of the statute, the Pennsylvania Supreme Court answered the question in the affirmative, concluding that such IME clauses are, in fact, void against public policy. *See id.* at 1112, 1127.

Further, after concluding that Section 1796(a) imposes mandatory obligations on insurers, the Pennsylvania Supreme Court considered the two specific IME clauses at issue in the consolidated matters before it, finding that those particular clauses were in irreconcilable conflict with the statute. *See id.* at 1125-26. Similarly, here, although Plaintiff contends that the IME clause obviously referred to Section 1796 by referring to "Pennsylvania law," and that Defendant clearly was invoking the procedure set forth in that statute – and thus that Defendant could not have been relying on unsettled law – the Court disagrees and concludes that the IME clause here is in direct conflict with Section 1796 in much the same way that the IME clauses in *Sayles* were.

11

Like the Pennsylvania Supreme Court concluded with regard to the *Sayles* IME clauses, the IME clause at issue here does not require the following: that an insurer file a petition with a court if the insurer wishes to compel a claimant to undergo an IME; that a judge adjudicate such petition; that the judge select the physician who will perform the IME and set the manner, conditions, and scope of the examination; or that the judge determine whether benefits should be terminated. *See id.* at 1126.

Upon consideration, the Court thus finds that the IME clause in this case is largely similar to the IME clauses that the Pennsylvania Supreme Court found to be against public policy in *Sayles*. However, the Court further finds that, because the law regarding such clauses was unclear and unsettled at the time Defendant requested an IME in this matter, because there was a split in opinion among the various courts that had considered the validity of IME clauses in conjunction with Section 1796, and because Defendant's request for an IME was in accordance with an interpretation of the law expressed by some of those courts, Defendant's action does not demonstrate bad faith even though that interpretation was later found to be incorrect.

Therefore, the Court finds that Plaintiff has not met her burden of showing that Defendant did not have a reasonable basis for requesting that Plaintiff submit to an IME, or that Defendant acted unreasonably in interpreting the Policy's IME clause in conjunction with Pennsylvania law as permitting it to request an IME without obtaining a court order, and thus Plaintiff has not shown that Defendant acted unreasonably and in bad faith in failing to pay Plaintiff her benefits under the Policy. Accordingly, the Court finds that no reasonable trier of fact could find in Plaintiff's favor, under the clear and convincing standard of proof, as to her claim of statutory bad faith in Count III of the Complaint.

### IV.     Conclusion

Based on the foregoing, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted. Accordingly, summary judgment is granted in favor of Defendant as to Count III of the Complaint.

An Order consistent with this Memorandum Opinion follows.

Dated: December 20, 2022                   *s/ W. Scott Hardy*
                                            W. Scott Hardy
                                            United States District Judge

cc/ecf:  All counsel of record